UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-70-HRW

RICHARD BALLEW                                                                          PLAINTIFF

VS:                         **MEMORANDUM OPINION AND ORDER**

DENISE BLACK, ET AL.                                                              DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)     The "Motion for Summary Judgment " [Record No. 14], filed by counsel for

Defendants Scott Haas and Gary Beckstrom ;

(2)     the "Motion for Summary Judgment " [Record No. 17], filed by counsel for

Defendant Linda Black; and

(3)     the "Response and Objection " [Record No. 25] filed by Richard Ballew, the *pro

se* plaintiff, to both motions for summary judgment.

FACTUAL BACKGROUND
1.  The Complaint

The plaintiff, Richard Ballew, filed a "Notice" with the Court on October 23, 2006,

stating that he has been paroled and that his current address is "Richard Ballew, Correctional R.

Center, 11781 State Route 762, Orient, Ohio, 43146." [Record No. 33] [1]  On April 19, 2006,

Ballew filed the instant  *pro se* civil rights complaint under 42 U.S.C. §1983.  The plaintiff

_____

[1]

When the plaintiff filed this action, he was confined in the Little Sandy Correctional
Complex ("LSCC") in Sandy Hook, Kentucky.

named three defendants:  Denise Black, nurse at the LSCC; Scott Haas, M.D., Medical Director of the LSCC; and Gary Beckstrom, Warden of the LSCC.  The plaintiff seeks $2.5 million in damages, injunctive and declaratory relief.

Plaintiff alleged that he suffers from high blood pressure and diabetes and that he takes medications for both conditions.  Specifically, he alleged that the defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical needs for a period of approximately 31 days beginning on September 22, 2005.

He alleged that during the one-month period he was in custody in the State of Ohio pursuant to the Interstate Agreement on Detainers Act, the defendants failed to send his medications to the Ohio authorities.  He alleged that he was denied access to his medications for 31 days.  He further claimed that the defendants not only failed to ensure that the Ohio authorities were even notified of his medical conditions, but that they also failed to provide the Ohio authorities with a medical release which would have enabled the Ohio authorities to provide him with the necessary medications.

He states that upon his return to the LSCC, he learned that his blood sugar drastically dropped and that he had to be placed on medical watch. He claimed that the defendants' deliberate indifference subjected him to serious physical harm, specifically, low blood sugar levels, possible blindness and/or death.

In his complaint, he stated that he informed Nurse Black that his medications had not been sent with him to Ohio.  According to the plaintiff, Nurse Black responded that the plaintiff should have notified the LSCC medical staff that he was being transferred and that arrangements

needed to be made to transfer his medications.  The plaintiff states that he had insufficient advance notice of his transfer and that it was not his responsibility to have informed the LSCC medical staff that he was being transferred.

The plaintiff filed a grievance (#06-007-LSCC) with the LSCC.  He did not attach the entire grievance to his complaint; instead, he attached only the response from the last step of the administrative process, the "Health Care Grievance Final Administrative Review."  This response was the March 10, 2006 letter from Defendant Dr. Scott Haas, M.D.[2]  Dr. Haas disagreed with the LSCC's position that it was the plaintiff's duty to inform the LSCC medical staff of his transfer.  Haas stated as follows:

> "It is not the responsibility of the inmate to inform medical of clinically related transportation needs.  I am referring this matter to the Warden and Nurse Service Administrator of LSCC to address with a formal protocol."

[Haas Letter, Attachment to Complaint].

On May 23, 2006, the Court entered a Memorandum Opinion and Order [Record No. 4] in which it dismissed the plaintiff's construed official capacity claims against the defendants. Based upon Dr. Haas' letter, however, the Court allowed the construed individual capacity claims against the named defendants to proceed.[3]

---

[2]

 The defendants attached the all of documentation, from every stage of the plaintiff's grievance process, to their respective motions for summary judgment.

[3]

In that Opinion and Order, the Court identified Dr. Haas as the Medical Director of the LSCC.  It was not entirely clear to the Court at that time of what entity and/or agency Haas was the Medical Director.  Based upon exhibits which the defendants attached to their respective motions, it appears that Dr. Haas is actually the Medical Director of the Adult Institutions of the Kentucky Department of Corrections ("KDOC"), not the Medical Director of the LSCC.

3

2. <u>Motions for Summary Judgment [Record Nos. 14 and 17]</u>

All three of the defendants advance essentially the same legal argument:  that the plaintiff

failed to fully exhaust the claims which he subsequently asserted in his §1983 complaint.  First,

Defendants Beckstrom and Haas argue that on January 1, 2006, the date on which the plaintiff

initiated the grievance process, he failed to specifically mention any problem with either of them.

Second, all of three of the defendants argue that in his initial grievance, and in his appeal to the

LSCC Health Care Grievance Committee, the plaintiff failed to allege either:  (1) that anyone

at the LSCC had failed to inform Ohio authorities that he (plaintiff) suffered from a medical

condition which required constant medication, or (2) that Ohio authorities needed to obtain a

release to administer medication to him.

In both motions for summary judgment, the defendants attached a complete set of all the

documents which the plaintiff filed during every stage of the grievance process.[4]  These filings

reveal that in his initial grievance dated January 1, 2006, the plaintiff reiterated the series of

events surrounding the failure to ensure that his medications accompanied him to Ohio.  Under

the section of the grievance form entitled "Action Requested," the plaintiff stated as follows:

> I would just like for Ms.  Black and the entire medical department **to watch and**

---

[4]

The defendants also attach two full and complete copies of Corrections Policy and Procedure
("CPP") 14.6, which governs all aspects of prisoner grievances.  CPP 14.6, § II (K) dictates the
multi-step procedures which an inmate is required to follow in order to grieve a health care concern.
*See* Attachment Nos. 3 and 4 to Record Nos. 14 and 17.
One version of CPP 14.6 is dated both September 14, 2004 (p. 1) *and* January 4, 2005 (pp.
2-25), and the other version is dated both October 14, 2005 (p. 1) *and* February 10, 2006 (pp. 2-25).
The Court is not aware why, within each of the provided versions of CPP 14.6, there are differing
dates on pages one and two through twenty five.  As relates to "Health Care Concerns" (§ II ( K)),
the two versions are, however, identical.

**be aware** of anyone who is leaving or going out to court, who's on meds, that they are given medication to take with them **so this will never happen again OKAY?**

[*See* Record No. 14-3, Plaintiff Initial Grievance, January 1, 2006 (Emphasis Added).

Nurse Black responded on January 3, 2006, that the plaintiff should have informed LSCC medical staff that he was being transferred and that his medications needed to accompany him. Unhappy with Nurse Black's response, the plaintiff then filed an appeal to the LSCC's three-person Health Care Grievance Committee ("HCGC"), which consisted of Dr. Ron Everson, Kelly Simpson, R.N., and Sarah Sanderlin, R.N. The plaintiff stated as follows in his appeal to the HCGC:

> I wish to appeal this decision because there has been no justification given as to why my medication was not sent with me or to me when I was released to a court trip; I further disagree with the informal resolution, insomuch, that inmates are not informed of the dates when the are being released to court trips, it should have been the responsibility of the institution to notify the medical department of such notice, to ensure that if the inmate had medical needs; that those needs would be properly cared for. I feel that the information resolution and the Committees' findings has failed to justify why their measures now being mentioned was not provided to me.

[*See Id*., Plaintiff's Appeal to HCGC, February 10, 2006].

As previously noted, the plaintiff's grievance was rejected at all levels. Only Dr. Haas, Medical Director of the KDOC, believed that LSCC medical staff--not the plaintiff--should have ensured that the plaintiff's prescriptions traveled with him to Ohio.

The defendants jointly contend that under often-cited and relevant case law governing prisoner litigation, the plaintiff is prevented from raising any specific claims--or claims against specific *persons*--not previously raised, identified or referred to in the grievance process. Here,

they allege that during the administrative grievance process the plaintiff failed to specifically mention either Beckstrom and Haas by name and, further, failed to mention his other specific allegations about what should have been told or provided to the Ohio authorities.

### 3.  Plaintiff's Response to Defendants' Motions [Record No. 25]

The plaintiff has filed a response.  Summarized, the response alleges that the plaintiff undertook every required step in order to administratively exhaust his claims.  Specifically, he asserts that he was not required to attach the result of each administrative disposition.  He emphasized that his *pro se* status warranted relaxed review of his claims.  Additionally, he stated that subsequent to the receipt of Dr. Haas' March 10, 2006 letter, he had been unable to obtain any additional documentation from LSCC regarding the alleged mishandling of his claim.  Accordingly, the plaintiff contends that discovery is needed to enable him to advance his claims, and he urges the Court not to grant the defendants' motions for summary judgment.

### STANDARD OF REVIEW

The defendants have filed motions for summary judgment under Fed. R. Civ. P. 56.  Under that rule, summary judgment is appropriate "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving

6

party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986) (citation omitted).

Under Fed.R.Civ.P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a summary judgment motion, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *see also Id.* at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. ").

The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

With these considerations in mind, the Court will address the various arguments presented by the defendants and the plaintiff's responses thereto.

DISCUSSION

The plaintiff is correct that he was not required to physically attach the outcome of each and every step within the administrative exhaustion process. The record reveals that in the Memorandum Opinion and Order entered herein on May 23, 2006, the Court determined that the plaintiff had presented enough evidence of administrative exhaustion to justify the case going forward. In the Opinion and Order, the defendants were instructed to educate the Court, in greater detail, about the history of the plaintiff's claims and grievances.

The defendants have done so in their respective filings and attachments thereto, Record Nos. 14 and 17. These filings reveal that while the plaintiff filed timely documentation which complied with all of the three steps governing the grievance process for inmate "Health Care Concerns" [*See* CPP 14.6 K.1-3], his grievances were substantively deficient as to two of the three named defendants.[5]

Here, the plaintiff's grievances are silent concerning Defendants Haas or Beckstrom. Simply put, while the plaintiff mentions twice in his initial grievance that *Nurse Black* may have failed to ensure that his medications accompanied him, he made no allegations in any of his grievances concerning the alleged oversight of either *Defendants Haas or Beckstrom*.

"When monetary damages are sought under section 1983 . . . a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.),

---

[5]    CPP 14.6 §II (K) 1. - 3. requires a state prisoner to file an "Informal Resolution," which the institutional chief medical authority reviews. If the institutional chief medical authority denies the prisoner's health care concern grievance, the prisoner must then seek review by the institution's "Health Care Grievance Committee." If unsuccessful there, the prisoner must then seek final administrative review of his grievance with the Medical Director of the Kentucky Department of Corrections. Time frames for appeals and responses are established within this regulation.

*cert. denied*, 414 U.S. 1033 (1973). A plaintiff must prove that a particular defendant was personally involved in the deprivation of his rights. *Id.*   A §1983 complaint must allege that specific conduct by the defendant was the proximate cause of the injury. *King v. Massarweh*, 782 F.2d 825, 829 (9th Cir. 1986).  When a complaint (such as the one filed in this case) merely lists multiple defendants and then describes at length the facts generally without naming the specific defendants involved in each event, and without setting forth with particularity which acts by each defendant caused each constitutional deprivation, the complaint is insufficient. *See Id.*

Moreover, Sixth Circuit law is clear in that during the grievance process, a prisoner-plaintiff must mention or  refer to each and every person whom he intends to name as defendant in a §1983 proceeding. *See Thomas v. Woolum*, 337 F.3d 720, 733-34 (6th Cir.2003), affirming dismissal for lack of specificity where the grievance "mention[ed] neither the defendants themselves nor any facts suggesting that officers other than Woolum knew anything of the incident"); *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir.2003) (claim of retaliation against one prison nurse which was initially raised by prisoner during step two of Michigan's prisoner grievance process was not administratively exhausted); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.2001) (a prisoner must file a grievance against the person he ultimately seeks to sue); and *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir. 1999) ( prisoner who named three officers in his grievance, and who could have but did not name two additional officers, had not exhausted his administrative remedies with respect to the two previously unnamed officers).

For this reason, the Court will grant the motion for summary judgment filed by

9

Defendants Beckstrom and Haas.  It will, however, deny Nurse Denise Blacks' motion for summary judgment.  In his January 1, 2006 initial grievance, the plaintiff alluded to Nurse Blacks' possible failure to send his medications to Ohio.  Black responded that it was incumbent on the plaintiff to have notified the medical staff that he was being transferred, thus essentially blaming the plaintiff for the failure to send the medications.  Dr. Haas stated in his March 10, 2006 letter that LSCC staff had not handled the situation properly, and that it was not the *plaintiff's* responsibility to have notified the LSCC medical staff in advance about his transfer to Ohio.  Accordingly, the Court will deny Nurse Denise Black's motion for summary judgment.

Finally, the Court rejects the defendants' joint argument that the plaintiff's grievances are lacking because they did not specifically state that the LSCC staff failed to notify Ohio authorities of his medical condition, and/or that the LSCC staff failed to forward a medical release to Ohio authorities.  The *pro se* plaintiff's grievances adequately conveyed his contention that for one month between September 17, 2005, and October 22, 2005, the LSCC failed either to forward his medications to Ohio or to alert those authorities about his medical condition.  The claims against Nurse Black may proceed.

Having said that the claims against Nurse Black survive a summary judgment at this time, there is one aspect of the plaintiff's grievances which have not been addressed.  The plaintiff's grievances failed to advise LSCC officials that he intended to seek significant monetary damages from any of the defendants.  The plaintiff's grievances appear to be warning the LSCC medical staff of the problem which he experienced (medications not being automatically sent along with inmates who are being transferred).  He appears to be notifying the LSCC staff that they need to be proactive in ensuring that medications are sent along with an inmate in the event of a

10

transfer to another facility.  In his initial grievance, he stated as follows:

> I would just like for Ms. Black and the entire medical department **to watch and be aware** of anyone who is leaving or going out to court, who's on meds, that they are given medication to take with them **so this will never happen again OKAY?**

[*See* Record No. 14-3, Plaintiff Initial Grievance, January 1, 2006 (Emphasis Added)].

While the plaintiff mentions in this grievance that he became sick and that his blood sugar rose upon his return to the LSCC, he made *no* mention in that filing that he intended to seek $2.5 million in damages.[6]  His grievances could be read as being more along the lines of advisory notices (prospective in nature) that the LSCC medical staff needed to ensure that medications accompany inmates who are transferred out of the LSCC.[7]

Because the plaintiff did mention Nurse Black in his initial grievance, the Court is compelled to allow the claims against her to go forward, as one "exhausts" processes, not forms of relief.  *Booth v. Churner*, 532 U.S. 731, 739 (2001).  This issue may be appropriate for more development and further briefing by the parties.

<u>CONCLUSION</u>

Accordingly, it is **ORDERED** as follows:

---

[6]

The plaintiff's appeal to the HCGC also does not contain any demand for the payment of any amount of monetary damages.  Like its predecessor grievance, it also reads as a general statement that LSCC procedures (regarding the issue of transferring medications with inmates) were inadequate and insufficient; that the problem needed to be addressed; and that inmates should not have to take it upon themselves to inform LSCC medical staff when they are going to be transferred.

[7]

CPP. 14.6.1.a. (4) also states that when filing a Health Care Grievance, an inmate "shall include all aspects of the issue in the written grievance that the grievant wants to be addressed by the grievance process so that they can be dealt with during step 1 (the Grievance and Informal Resolution Steps).

(1)     The "Motion for Summary Judgment " filed by counsel for Defendants Scott Haas and Gary Beckstrom  [Record No. 14] is **GRANTED**.

(2)     The "Motion for Summary Judgment" filed by counsel for Defendant Denise Black [Record No. 17] is **DENIED**.

(3)     A Partial Summary Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Defendants Scott Haas and Gary Beckstrom.

This November 1, 2006.

Signed By:

Henry R Wilhoit Jr.

United States District Judge

12